A96A1734. WILLIAMS v. THE STATE.
(481 SE2d 535)

RUFFIN, Judge.

A jury found Christopher Williams guilty of driving under the influence of alcohol. Williams appeals his conviction, alleging the trial court improperly admitted the results of his breath test and improperly denied his motion for new trial. We affirm.

Viewed in a light most favorable to uphold the verdict, the record shows that Williams was stopped for speeding. After administering several field sobriety tests, Williams was arrested for DUI. Williams subsequently submitted to a State-administered breath test on an Intoxilyzer 5000, producing results of .090 and .089.

1. In his first enumeration, Williams challenges the constitutionality of OCGA § 40-6-392 (f), which provides that a properly prepared certificate of inspection showing that a breath-testing instrument is

in good working order shall be self-authenticating and admissible in court. According to Williams, this statute is unconstitutional because it permits admission of a hearsay document in violation of his Sixth Amendment right to confront witnesses.

Williams originally filed this appeal in the Supreme Court, but the Supreme Court transferred the case to us after finding that Williams' "attack on the constitutionality of OCGA § 40-6-392 (f)" had not been properly raised. Williams concedes that this issue was not properly raised. However, he attempts to "back door" this problem by arguing that we must address whether the admission of this document violates his Sixth Amendment right to confront witnesses. We are not at liberty to address the argument in light of the fact that Williams failed to properly raise the constitutionality of OCGA § 40-6-392 (f). This statute represents the only authority under which the document was admitted. Thus, if we were to address Williams' Sixth Amendment right to confront issue, we would necessarily be ruling on the constitutionality of the statute permitting admission of this particular document. The Supreme Court has already ruled that this issue was not properly raised. Accordingly, this enumeration lacks merit.

2. In his second enumeration, Williams contends the trial court erred in admitting the Intoxilyzer 5000 certificate of inspection because the certificate was prepared eight months after the alleged inspection. The certificate, prepared on August 29, 1995, shows that the Intoxilyzer 5000 was tested and found to be in good working order on December 19, 1994. Keadle testified that a certificate was not prepared in December 1994 because it was not mandated by law. In fact, the statute requiring such a certificate did not go into effect until after April 21, 1995. OCGA § 40-6-392 (f). Keadle further testified that (1) in December 1994, he inspected the State's breath-testing instruments in the same manner in which he tested them at the time of the hearing, and (2) when he was made aware that his inspections needed corresponding certificates, he prepared those certificates using the calibration check cards produced at the time of the initial inspection.

Contrary to Williams' argument, the clear language of OCGA § 40-6-392 (f) does *not* mandate that the certificate be prepared on the day of inspection. Moreover, Ga. L. 1995, p. 1160, § 5, which was not codified by the General Assembly, provides that this Act shall apply to all cases pending at the time of its approval by the Governor, and Williams' case was, indeed, pending when subsection (f) was added on April 21, 1995. Ga. L. 1995, p. 1160, § 5. Any discrepancy between the date of inspection and the date of the certificate should go to the weight of the evidence and not its admissibility.

Accordingly, we cannot find that the trial court abused its discre-

tion in admitting the Intoxilyzer 5000 certificate of inspection.

3. In his third enumeration of error, Williams contends the trial court erred in admitting the results of the breath test because the test was not performed on a machine in good working order. Based on our finding in Division 2, this claim lacks merit. The trial court properly admitted the certificate of inspection showing that the Intoxilyzer 5000 was in good working order in December 1994. Williams fails to cite any authority, and we can locate none, mandating an inspection of the instrument after his test.

4. Williams next asserts the trial court erred in admitting the results of his breath test because the test was not performed according to methods approved by the Division of Forensic Sciences ("DFS"), as required by OCGA § 40-6-392 (a) (1) (A). Specifically, Williams argues that the DFS had not approved the Intoxilyzer 5000 as a qualified instrument for breath tests in Georgia.

This issue was recently decided adversely to Williams. See *Corner v. State*, 223 Ga. App. 353 (477 SE2d 593) (1996). In light of that holding, the trial court did not err in admitting the results of Williams' breath test.

Furthermore, Officer Frazier, who administered the breath test to Williams, testified that he was certified and trained by the DFS to operate the Intoxilyzer 5000. In addition, it is undisputed that the DFS issued the certificate of inspection for the Intoxilyzer 5000 used in this case. Frazier's testimony that he was certified and trained by the DFS at the time of Williams' arrest to perform tests on the Intoxilyzer 5000 was sufficient to prove that the machine used for the test was an approved machine. "Since the director issued the permit for the operation of this particular machine, it may be inferred that its design was specifically approved by him. Accordingly, the results of the test were admissible." (Citations and punctuation omitted.) *Wallace v. State*, 188 Ga. App. 77, 79 (4) (371 SE2d 914) (1988).

5. In his fifth enumeration of error, Williams contends the trial court erred in charging the jury on the presumptions contained in OCGA § 40-6-392 (b) because there was no evidence presented from which the jury could determine his alcohol concentration at the time alleged. This enumeration lacks merit.

Officer Frazier testified that Williams' breath test results were .090 at 1:21 a.m. and .089 at 1:24 a.m. While he admitted that the test results did not show what the reading would have been at 12:27 a.m., when he stopped Williams for speeding, it was not necessary for the State to show Williams' blood-alcohol level at the time he was initially stopped. It is well established that "[t]he absence of testimony about the metabolic rate of alcohol in the blood so as to permit a calculation of blood-alcohol content at the actual time of [the initial stop] does not render the evidence insufficient to support the desired

inference [that Williams' blood-alcohol level at the time he was stopped for speeding exceeded the legal limit]. [Cits.]" *Cheevers v. Clark*, 214 Ga. App. 866, 868 (2) (449 SE2d 528) (1994). Thus, the trial court did not err in charging the jury on the presumptions of intoxication at various blood-alcohol levels established by OCGA § 40-6-392 (b).

6. Williams further contends the trial court erred in the manner by which it charged OCGA § 40-6-392 (b). According to Williams, the trial court's charge was conflicting, confusing, misleading, and impermissibly burden-shifting.

In charging the jury, the trial judge stated as follows: "If there was, at that time, an alcohol concentration of .08 grams or more, it shall be inferred or should be inferred that the person was under the influence of alcohol, as prohibited by law." At the close of the charge, the State informed the trial court that the charge should have been "may infer" as opposed to "shall" or "should infer" and requested a correction on the charge. The trial court then recharged the jury as follows: "Ladies and gentlemen of the jury, while I was giving the charge to you, I — in talking about the various percentages, I said in one — at one time that you shall infer, and I didn't — That was a mistake. All of those inferences you may make if you so see fit; and if you don't see fit, you shall not make any inferences."

While a trial court's mandatory instruction that the influence of alcohol, in regard to OCGA § 40-6-392 (b), "shall be inferred" is impermissible because of its burden-shifting effect (see *Ellerbee v. State*, 215 Ga. App. 102, 104 (5) (449 SE2d 874) (1994)), we find that the trial court's recharge promptly placed the jury on sufficient notice of what was being corrected. See *Johnson v. State*, 187 Ga. App. 803 (2) (371 SE2d 419) (1988). Hence, this enumeration is without merit.

7. Finally, we do not believe a new trial is required by the State's failure to disclose allegedly exculpatory evidence. Specifically, Williams argues that a booking photograph showing his appearance at a time relevant to the offense was not produced and that this photograph would have assisted the jury in determining his level of intoxication. We disagree.

Clearly, the question is one of materiality of the nondisclosed evidence. "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish materiality in the constitutional sense. . . . The defendant has the burden of showing that the evidence withheld from him so impaired his defense that he was denied a fair trial within the meaning of the *Brady* rule." (Citations and punctuation omitted.) *Brooks v. State*, 182 Ga. App. 144, 145 (1) (355 SE2d 435) (1987).

Examining the record in the present case, we conclude that Wil-

liams has not met his burden of proof showing both the materiality and the favorable nature of the evidence sought. Id. See also *Duncan v. State*, 163 Ga. App. 148, 149 (3) (294 SE2d 365) (1982). Officer Frazier testified that Williams' appearance was neat and not disheveled. The officer never testified that Williams' eyes were bloodshot or that his face was flushed. Moreover, the officer based his arrest on the field evaluations, the speed of Williams' vehicle, and Williams' demeanor, not his appearance. Accordingly, we hold that the trial court did not err in denying Williams' motion for new trial. Id. Even if the photograph was material, it was merely cumulative of Officer Frazier's testimony.

*Judgment affirmed. McMurray, P. J., and Johnson, J., concur.*

DECIDED JANUARY 15, 1997 —
RECONSIDERATION DENIED JANUARY 28, 1997 — 

*Robert W. Chestney*, for appellant.
*Ralph T. Bowden, Jr., Solicitor, Michael A. Penn, Charles C. Flinn, W. Cliff Howard, Assistant Solicitors*, for appellee.