## A00A0229. WATSON v. THE STATE.

(534 SE2d 93)

RUFFIN, Judge.

Anton Watson appeals his convictions of entering an automobile with intent to commit theft and theft by taking. Watson claims that his trial counsel was ineffective in several respects. We disagree and affirm.

The relevant facts follow. Jane Shaffner was returning to her car in the parking lot at Gwinnett Place Mall when she saw what she "thought was a break-in on a BMW." As she was walking, Shaffner heard glass shatter and a car alarm go off. She looked up and saw a man inside the BMW with his legs hanging out of the broken passenger-side window. The man was "going through stuff real quick" and seemed anxious. The BMW was parked next to a white van, which was next to Shaffner's car. Shaffner scanned the parking lot and saw a police officer parked nearby. She then continued to her car, tried unsuccessfully to see the license number of the van, and drove over to the police officer, Lieutenant Edmunds of the Gwinnett County Police Department. Shaffner pointed to the van, which was pulling away.

As he left to pursue the van, Edmunds passed the BMW and saw that the window had been smashed. He followed the van, which was "weaving in and out of traffic at an accelerated rate of speed." Eventually, he caught up with the van and saw that its license plate "had been bent up in order to keep people from seeing the numbers on the tag." After Edmunds turned on his blue lights, the van continued driving and then turned onto another street. Eventually the van stopped and its two occupants — Watson, the driver, and Lonnie Evans, the passenger — were arrested. Police found a screwdriver in Evans' pocket and a Palm Pilot mini-computer on the side of the road near the van. Papers inside the Palm Pilot's case bore the name of the BMW's owner, who confirmed that the Palm Pilot was his and that it had been taken from his car.

Shaffner, who had followed in her car, was taken by Sergeant Benson, another officer at the scene, to see Watson and Evans, who were sitting in the back of a police car. According to Benson, Shaffner identified Watson as the man she saw in the BMW. Shaffner testified at trial, however, that she could not remember whether she had identified either of the men in the police car and that she "didn't see the face up close of the man that was in the BMW." Shaffner was not asked to identify the perpetrator from the witness stand.

Evans, who was Watson's father-in-law, testified that, on the day of the break-in, he and Watson drove the van to the mall, where Watson planned to buy a gift for his girlfriend. According to Evans, as Watson was driving in the parking lot, Evans "saw something" and

told Watson to "hold for a minute." Evans then stepped out of the van, broke the window of the BMW with a screwdriver, reached inside and grabbed "something," returned to the van, and told Watson, "Let's go." Watson "was upset and seemed afraid," but he drove away. Watson told Evans that police were following the van, and Evans tossed "that thing" out the window. According to Evans, Watson had nothing to do with the crime.

Watson and Evans were both charged with entering an automobile with intent to commit theft and misdemeanor theft by taking. Evans pled guilty before Watson's trial. Watson was convicted on both counts.

To establish ineffective assistance of counsel, Watson must show that his counsel's performance was deficient and that the deficient performance prejudiced his defense.[1] Prejudice exists where "there is a reasonable probability the jury would have reached a different verdict, absent the error of counsel."[2] We will affirm a trial court's finding that counsel was effective unless it is clearly erroneous.[3]

(a) First, Watson contends that trial counsel was ineffective because he erroneously told Watson and the trial court that the crime of entering an automobile was a misdemeanor. But Watson did not raise this argument in his motion for new trial and did not argue it at the hearing. Thus, it is waived, and we will not consider it on appeal.[4]

(b) Next, Watson complains that counsel failed to file a motion challenging the legality of his arrest. We assume that Watson is arguing that counsel should have filed a motion to suppress the fruits of the arrest.[5] To establish that counsel's failure to file a motion to suppress constituted deficient performance, Watson must "make a strong showing that had the motion been filed, the evidence would have been suppressed."[6] This he failed to do.

Watson concedes that Lieutenant Edmunds was justified in stopping the van based on what Shaffner told him, but he contends that Edmunds did not have probable cause to immediately arrest the van's occupants. Probable cause for an arrest exists where "the facts within the officer's knowledge at the time of the arrest constituted reasonably trustworthy information which was sufficient to authorize a prudent person to believe that [the defendant] had committed an offense."[7] To determine whether Edmunds had probable cause for the arrest, we look to the information he had at the time of the

---

[1] *Edenfield v. State*, 238 Ga. App. 362, 363 (519 SE2d 452) (1999).

[2] (Punctuation omitted.) Id.

[3] Id.

[4] See, e.g., *McGhee v. State*, 237 Ga. App. 541, 544-545 (1) (b) (515 SE2d 656) (1999).

[5] Watson does not indicate what evidence he thinks should have been suppressed.

[6] *Edenfield*, supra.

[7] *Harvey v. State*, 266 Ga. 671, 673 (469 SE2d 176) (1996).

arrest.[8] Edmunds testified at trial that Shaffner "flagged [him] down" and said that she saw a man lean into a dark-colored BMW and then get into a white van and that she thought a theft was occurring.[9] Shaffner pointed to the van, and Edmunds saw that it was near a dark car. He drove past the dark car, confirmed that it was a BMW, and saw that one of its windows had been broken. Edmunds followed the van, which weaved and sped through heavy traffic and continued on after he activated his blue lights. After the van finally stopped, Edmunds saw that the license plate had been tampered with. Under these circumstances, we conclude that Edmunds had probable cause to arrest Watson when he stopped the van.[10] As the arrest was legal, counsel did not err in failing to challenge it.

(c) Watson contends that counsel should have filed a motion to suppress Shaffner's "showup" identification of him in the police car. But Watson failed to make a strong showing that he would have won such a motion. Identification evidence will be suppressed if (1) the identification procedure was impermissibly suggestive and (2) there was a very substantial likelihood of irreparable misidentification.[11] On-the-scene "showup" identifications, like the one here, "have been held not to be impermissibly suggestive but necessary due to the practicabilities inherent in such situations."[12]

(d) Watson asserts that counsel was ineffective for failing to move for a mistrial after Lieutenant Edmunds commented on Watson's right to remain silent. The testimony in question is as follows:

Q: Other than basically taking the defendants into custody at that time, did you perform any other police functions there at the scene?
A: Well, I *Mirandized* both Mr. Evans and Mr. Watson and asked them if they wanted to talk about it —
Q: That's all. Did you have the van towed from the scene?

At the motion for new trial hearing, trial counsel testified that he did not object to Edmunds' testimony because "the State did the proper

---

[8] See id. at 672.

[9] As Watson points out, Shaffner testified that she did not actually see the man leave the BMW and get into the van. But our probable cause inquiry focuses on *Lieutenant Edmunds'* state of mind at the time of the arrest. According to Edmunds, Shaffner told him that she saw the man enter the van.

[10] See OCGA § 17-4-20 (a); *Youhoing v. State*, 226 Ga. App. 475, 476 (1) (487 SE2d 86) (1997) ("An officer does not . . . actually have to see a suspect commit the act which constitutes a crime for the crime to be considered as having been committed within the officer's presence or general knowledge.").

[11] *Barber v. State*, 236 Ga. App. 294, 295-296 (1) (512 SE2d 48) (1999).

[12] (Punctuation omitted.) *Gatling v. State*, 203 Ga. App. 407, 409 (2) (416 SE2d 877) (1992).

thing" by cutting Edmunds off before he could comment on Watson's silence, and counsel did not want to call attention to the issue. Pretermitting whether Edmunds' testimony was objectionable, counsel's decision not to object or move for a mistrial was a matter of trial strategy, and we cannot say that decision fell outside the wide range of reasonable professional conduct.[13]

(e) Watson charges that trial counsel was ineffective for failing to move for a directed verdict at the close of the evidence. Counsel moved for a directed verdict at the close of the State's case, asserting that there was no evidence that Watson was the man in the BMW. The trial court denied the motion, and counsel did not renew it at the close of the evidence.

Pretermitting whether counsel should have renewed the motion, Watson has not shown any prejudice. A directed verdict should be granted only "[w]here there is no conflict in the evidence and the evidence introduced with all reasonable deductions and inferences therefrom shall demand a verdict of acquittal."[14] Watson's only witness was Evans, who took full responsibility for the break-in. On cross-examination, however, Evans admitted that before the trial he told the prosecutor that he had not taken anything from the BMW nor thrown anything out of the van. Moreover, Shaffner identified Watson as the man in the BMW. And even if Watson was not the man in the BMW, the evidence showed that he was the getaway driver. Thus, Watson would not have been entitled to a directed verdict.

(f) Next, Watson argues that his lawyer's trial strategy was bizarre and unrealistic. According to Watson,

the strategy was to counter the state's *circumstantial* evidence of [Watson's] participation in the break in with *direct* evidence by [Evans] that, in fact, [Watson] had no knowledge of the BMW break in. Trial counsel then expected the trial court to grant a motion for directed verdict based on the *direct* evidence rebutting the *circumstantial* evidence.

Despite counsel's statements at the motion for new trial hearing, however, we focus on what counsel actually did at trial. In his motion for directed verdict, he argued that the evidence showed that Watson was merely present at the scene of the crime. And it is apparent from the record that counsel's overall strategy was to blame the crime on Evans. Counsel discussed this strategy with Watson before the trial,

---

[13] See, e.g., *Rivers v. State*, 271 Ga. 115, 118 (2) (b) (516 SE2d 525) (1999) ("An attorney's failure to object to [inadmissible] testimony may be seen as trial strategy, i.e., avoiding an objection that would draw the jury's attention to the statement.").

[14] OCGA § 17-9-1 (a).

and Watson agreed with it. "Substantial latitude is given during judicial review of trial counsel's decisions regarding trial strategy,"[15] and we cannot say that counsel's "mere presence" defense was unreasonable.

(g) Watson asserts that counsel was ineffective for failing to object to certain hearsay testimony. Watson cites three examples: (1) Lieutenant Edmunds' testimony that another officer, Officer McGrath, told him that a citizen had found the Palm Pilot near the stopped van; (2) Officer McGrath's testimony to the same effect; and (3) Lieutenant Edmunds' testimony that another officer told him that the owner of the BMW said his name was written on papers inside the computer's case. These statements, however, are consistent with Watson's defense that Evans was the perpetrator. In fact, Evans himself testified that he took the Palm Pilot from the BMW and later tossed it from the van. Under these circumstances, trial counsel's failure to object to the officers' statements was not ineffective.[16]

(h) Lastly, Watson argues that his lawyer was ineffective for not presenting evidence about Watson's distinctive physical appearance. Watson also asserts that counsel failed to effectively cross-examine Shaffner and Sergeant Benson concerning the accuracy of Shaffner's identification. But Watson did not raise these arguments in his motion for new trial or argue them at hearing on that motion, and he has therefore waived them.[17]

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

DECIDED APRIL 17, 2000.

*Randolph G. Rich,* for appellant.
Anton R. Watson, *pro se.*
*Daniel J. Porter, District Attorney, James V. Branch, Assistant District Attorney,* for appellee.

---

[15] (Punctuation omitted.) *Rivers,* supra.
[16] See, e.g., *Aleman v. State,* 227 Ga. App. 607, 612 (3) (b) (489 SE2d 867) (1997) (counsel was not ineffective for failing to object to evidence consistent with defense).
[17] See *McGhee,* supra.