## A00A1500. GARY v. THE STATE.
(536 SE2d 192)

ELDRIDGE, Judge.

Jonathan D. Gary filed a motion to suppress evidence found during what he contends was an illegal search of his person. The trial court denied the motion. Gary appeals, and we affirm.

In construing the evidence most favorably to uphold the trial court's findings and judgment, *Boyce v. State*, 240 Ga. App. 388, 390 (523 SE2d 607) (1999), the facts adduced at the motions hearing show that at approximately 11:40 p.m., Lowndes County Narcotics Division Investigators Wilbur and Pitchford were conducting a routine patrol of a high drug crime area in Valdosta. Gary was alone on the street walking westbound. When Gary saw the investigators' patrol car, "he immediately stopped, turned around and started walking back in the other direction." The investigators went around the block and pulled up beside Gary. Investigator Pitchford was familiar with Gary and knew that "he is not normally on that side of town." The investigators approached Gary and asked his name; Gary told them. Investigator Wilbur asked if he could pat Gary down for weapons and drugs, and Gary said yes. Wilbur asked Gary if he would empty his pockets, and Gary complied. The investigators testified at the motions hearing that they did not imply Gary was required to cooperate with any of their requests; that Gary was not under arrest; and that Gary was free to leave at any time, since there was "[n]othing we could have done. I mean, if he said, I don't want to talk to you, see you later, he could have walked off and left."

During their conversation with Gary, the investigators noticed that he "was talking in a strange way." "He was very stiff lipped." Investigator Pitchford asked Gary if he could "check his mouth." "Mr. Gary stated that that would be all right." Gary opened his mouth, "and he was moving something around inside his mouth. Told him to lift his lip up and when he did you could see, it appeared to be crack cocaine in his mouth." Pitchford grabbed Gary's arm and ordered him to "spit it out." Gary immediately clenched his mouth shut and started to struggle. Gary was forced to the ground where he continued to struggle "by flailing his feet and throwing his arms around." After struggling for several minutes, Gary suddenly stated, "I don't have anything in my mouth." On the ground immediately below Gary's chin were several pieces of crack cocaine. Following his arrest, a small bag of powdered cocaine and a small bag of marijuana were also found on or about Gary's person. Gary did not testify at the motions hearing, and no evidence contradicted the investigators' version of events. *Held*:

1. Gary first argues that the investigators' initial approach was

an invalid *Terry*[1] stop, without reasonable articulable suspicion to support it. Thus, Gary contends, the instant case is controlled by our decision in *Barnes v. State*, 228 Ga. App. 44, 46 (491 SE2d 116) (1997), and reversal of the trial court's judgment is required thereunder. We do not agree.

In *Barnes*, the officers became suspicious of the defendant for the same reasons the investigators' suspicions were aroused in the instant case: (a) presence in a high drug crime area, and (b) turning around and walking the other way upon spotting the police. However, the similarities end there. In *Barnes*, the officers followed up on their suspicions by asking the defendant to stop and speak with them and, immediately thereafter, asking defendant "if he would place his hands on the car." *Barnes v. State*, supra at 45. Then, without consent, the officers attempted to physically wrest from the defendant the object that he was holding in his hand. "As we attempted to find out what was in his hand, Mr. Barnes started tussling with us." Id. at 44. Because it was clear from the totality of the evidence that Barnes was not free to leave once the officers had started to speak with him, this Court determined that the initial stop was a *Terry* investigative stop. Id. at 46. In that regard, we found that Barnes' behavior, while suspicious, did not rise to the level of "reasonable articulable suspicion" of criminal wrongdoing necessary to support a *Terry* stop. Id.

In this case, however, the uncontradicted evidence was that Gary voluntarily stopped to speak with the investigators; that the investigators never conveyed the notion that Gary was required to stop and speak with them; and that Gary was not detained but was free to leave at any time prior to the time crack cocaine was seen in his mouth pursuant to a voluntary consent to search. Accordingly, under the uncontradicted evidence of record, the instant case does not involve a *Terry* stop à la *Barnes v. State*, supra, but a "first tier" police/citizen encounter involving no coercion or detention. *Stokes v. State*, 238 Ga. App. 230, 232-233 (518 SE2d 447) (1999). Under such "first tier" encounter,

> [e]ven when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual; ask to examine the individual's identification; and request consent to search — as long as the police do not convey a message that compliance with their requests is required.

(Citation and punctuation omitted.) Id. at 232. Accordingly, *Barnes v. State*, supra, does not control, and reversal of the trial court's judg-

---

[1] *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968).

ment is not required.

2. The trial court found that "the search of the Defendant was based upon the Defendant's voluntary consent to said search and the resulting search and seizure was proper." "[S]ince the trial court sits as the trier of fact, its findings are analogous to a jury verdict and will not be disturbed if there is any evidence to support them." (Citations omitted.) *Morgan v. State*, 195 Ga. App. 732, 735 (3) (394 SE2d 639) (1990); *Boyce v. State*, supra.

Here, there is evidence to support the trial court's findings since both investigators testified, without contradiction, that Gary voluntarily consented to a search of his mouth. Contrary to Gary's suggestion, the evidence shows that Investigator Pitchford told Gary to lift his lip only *after* Gary had already voluntarily consented to the search of his mouth, and such instruction was in furtherance of the consensual search. Gary voluntarily lifted his lip in compliance with the request and in no way implied that such request exceeded the scope of his consent to search. See, e.g., *Semelis v. State*, 228 Ga. App. 813, 815 (b) (493 SE2d 17) (1997). As the evidence supports the conclusion that the search and seizure were based on Gary's voluntary consent, the trial court did not err in denying the motion to suppress.

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED JUNE 21, 2000.

*Closson, Bass & Tomberlin, J. Michael Bass*, for appellant.
*J. David Miller, District Attorney, J. Bennett Threlkeld, Assistant District Attorney*, for appellee.