## A00A1033. SELF v. THE STATE.
(537 SE2d 723)

BLACKBURN, Presiding Judge.

Following a jury trial, James Self appeals his convictions of six counts of impersonating a police officer and three counts of aggravated assault. Self contends that: (1) the evidence was insufficient to support his convictions; (2) the denial of his motion to suppress his identification in a showup was erroneous; and (3) the denial of his motion to suppress the evidence was erroneous. For the reasons set forth below, we affirm Self's convictions.

1. We have determined that

[o]n appeal the evidence must be viewed in the light most favorable to support the verdict, and [Self] no longer enjoys

---

a presumption of innocence; moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility. The . . . verdict must be upheld if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

(Punctuation omitted.) *Kovacs v. State,* 227 Ga. App. 870 (1) (490 SE2d 539) (1997). See *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

So viewing the evidence, it reveals that, while claiming to be members of the Northeast Georgia Task Force, Self and an accomplice confronted a total of six individuals in two different incidents on the same day. Self held a shotgun and ordered several of the victims to the ground. Self also flashed a wallet badge at some of the victims. During their conversations in front of the victims, Self and his accomplice referred to each other as sergeant and lieutenant.

The first incident took place at approximately 3:00 a.m. on January 27, 1998, when Self and his accomplice went to an apartment occupied by four men. Self and his accomplice entered the residence yelling at the occupants to get on the ground. They identified themselves as police officers and said they were searching for drugs. The victims later discovered that some money and a green buck knife were missing. Officer Higginbotham responded to the victims' call to police and started his investigation with the description of the suspects.

The second incident took place at approximately 10:30 p.m. on the same day. Self and two accomplices knocked on the victim's apartment door. They identified themselves as undercover officers and questioned the victim about another individual. The victim's neighbors came outside and were also questioned by Self and his accomplices, who again identified themselves as police officers. Officer Higginbotham also responded when the second group of victims called to report the incident. These victims gave a similar description of the perpetrators and were also able to give a description of the car the perpetrators were driving.

A few hours after the second incident, the victims called the police again to report that the perpetrators' car was back in their parking lot. Officer Higginbotham responded and located the vehicle. While he waited for backup to arrive, he determined that the tag on the vehicle was registered to a pickup truck, not a passenger car. Officer Higginbotham recognized that two of the vehicle's passengers fit the description given to him of the perpetrators. As the suspects exited the car, they were handcuffed and laid on the ground until the scene was secured. After the suspects were placed in separate patrol cars, the victims arrived and identified Self as one of the perpetra-

tors.

(a) Self contends that, because the victims never believed that he was a police officer, the evidence is insufficient to support a conviction of impersonating a police officer. Self's contention is without merit because the crime of impersonating an officer does not require that the victims actually be misled. The State must only show that Self intended to mislead the victims. OCGA § 16-10-23 provides, in pertinent part, that: "[a] person who falsely holds himself out as a peace officer or other public officer or employee with intent to mislead another into believing that he is actually such officer commits the offense of impersonating an officer."

In the present case, Self identified himself as a police officer and an undercover officer to six individuals. He carried a gun, flashed a badge, and said he was looking for drugs. There can be no doubt that Self intended to mislead his victims into believing he was a police officer, and it is irrelevant whether his deception was effective. The evidence is sufficient to support Self's conviction. See *Murray v. State*, 269 Ga. 871, 874 (4) (505 SE2d 746) (1998) (evidence that accomplice represented to victims that he and the defendant were police officers was sufficient to establish defendant's guilt of impersonating an officer).

(b) Self contends the evidence is insufficient to support the aggravated assault convictions because the victims realized his gun was not loaded.[1] The victims testified that there were shells in the gun and that Self only had to pump the gun to load a shell into the chamber. Additionally, they also testified that they thought they were going to get shot and that they were afraid.

Under these circumstances, there was sufficient evidence for the jury to conclude that the victims had a reasonable apprehension of receiving immediate, violent injury. See *State v. Bolman*, 222 Ga. App. 534, 535 (474 SE2d 721) (1996) (presence of deadly weapon "would normally place a victim in reasonable apprehension of being injured violently").

2. Self contends that the trial court erred in denying his motion to suppress his identification because the on-the-scene showup was too suggestive.

> "In cases involving the review of the grant or denial of motions to suppress or motions in limine, we must construe the evidence most favorably to uphold the findings and judgment of the trial court, and that court's findings as to dis-

---

[1] Aggravated assault occurs where a person commits an act that places another in reasonable apprehension of immediately receiving a violent injury, which is aggravated by the use of a deadly weapon. OCGA §§ 16-5-20 (a) (2); 16-5-21 (a) (2).

puted facts and credibility must be adopted unless clearly erroneous."

*State v. Bowen*, 231 Ga. App. 95 (498 SE2d 570) (1998).
Additionally,

[t]here is no per se exclusionary rule applied to pre-indictment confrontations. Pre-indictment confrontations should be scrutinized to determine if they are unnecessarily suggestive and conducive to irreparable mistaken identification. The totality of the circumstances must be viewed to determine if there is a likelihood of misidentification which offends against due process and the factors to be considered in evaluating the likelihood of misidentification include [(1)] the opportunity of the witness to view the criminal at the time of the crime, [(2)] the witness' degree of attention, [(3)] the accuracy of the witness' prior description of the criminal, and [(4)] the level of certainty demonstrated by the witness at the confrontation. (Citations and punctuation omitted.) *Flores v. State*, 228 Ga. App. 152, 153 (491 SE2d 86) (1997).

*Huff v. State*, 239 Ga. App. 83, 85 (1) (519 SE2d 263) (1999).
In the present case, the showup identification occurred approximately three and one-half hours after the second incident, and the three people who identified Self were the victims in the second incident. They testified that they talked face-to-face with Self for three to five minutes in conditions that were well lighted. The victims' outside lights were on by their respective front doors where Self and the victims spoke. For the showup, Self was handcuffed in the back of a patrol car. Separately, each victim looked through the car window, and the officer shined a light into the car. The officer asked if the individual looked familiar to them. The three victims identified Self as one of the individuals who impersonated an officer.
Based on the foregoing,

[t]he trial court's determination that there was, under the totality of the circumstances, no likelihood of irreparable misidentification is supported by the evidence, is not clearly erroneous, and is therefore affirmed. See *Hood v. State*, 199 Ga. App. 774 (406 SE2d 120) (1991).

*Johnson v. State*, 209 Ga. App. 632, 634 (2) (434 SE2d 169) (1993).
3. In his final enumeration of error, Self contends that the trial court erred in denying his motion to suppress evidence obtained in the search of the car. He contends that the stop of the vehicle in which he was a passenger and his arrest were not supported by prob-

able cause thereby causing the subsequent search of the vehicle to be illegal.

(a) Officer Higginbotham testified he checked the vehicle's license tag prior to stopping it and determined that the tag belonged to a pickup truck. Therefore, the potential violation of OCGA § 40-2-6 supported the stop of the vehicle. Additionally, "[a]n officer may conduct a brief investigatory stop of a vehicle if that stop is justified by specific articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct." (Citation and punctuation omitted.) *Howard v. State*, 233 Ga. App. 861 (505 SE2d 270) (1998). The vehicle in question was described by the victims of a crime, and the police were notified that the vehicle was back at the scene of the crime. The officer located the vehicle within moments of being notified of its whereabouts, and the officer testified as to the unusually slow movements of the vehicle. Under these circumstances, the trial court's determination that the stop of the vehicle was valid was not clearly erroneous. See *Bowen*, supra.

(b) Upon approaching the vehicle, the officer was able to identify two of the vehicle's occupants as fitting the description of the perpetrators. That determination, as well as the identification of the vehicle and the location of the vehicle, supports the trial court's determination that probable cause existed for Self's arrest.

> Whether the arrest was constitutionally valid depends upon whether, at the moment the arrest was made, the officers had probable cause to make it — whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [person suspected] had committed or was committing an offense.

(Citation and punctuation omitted.) *Mitchell v. State*, 200 Ga. App. 146, 147 (1) (407 SE2d 115) (1991). The trial court's findings were not clearly erroneous, and Self's motion to suppress was properly denied.

*Judgment affirmed. Eldridge and Barnes, JJ., concur.*

DECIDED JULY 21, 2000.

*Adrian L. Patrick*, for appellant.

*Harry N. Gordon, District Attorney, John A. Pursley, Assistant District Attorney*, for appellee.