## A01A1052. HOOPER v. THE STATE.
### (554 SE2d 750)

RUFFIN, Judge.

A jury found Deangelo Hooper guilty of armed robbery. He appeals, and for reasons that follow, we affirm.

The record shows that a gunman robbed Donald Wilt as Wilt and his 12-year-old son left the Omni following an Atlanta Hawks basketball game. The gunman approached Wilt and his son from behind as they walked down a flight of stairs between 10:15 and 10:30 p.m. According to Wilt, the individual placed his hand on Wilt's shoulder and demanded money. Wilt turned, and the robber "stuck [a] gun in [his] face." At that point, Wilt looked directly at the gunman and concentrated on his face for one to two seconds. The gunman then ordered Wilt to the ground, took his wallet, and fled. After the gun-

man left, Wilt located his son, who, in the meantime, had run for help, and together they searched for a police officer.

Wilt found an officer near the Omni Hotel and reported the incident. He described the gunman's race and stated that he was "a slender . . . man between five ten, six feet tall, wearing dark clothes and a dark knit cap." Wilt's son added that the gunman had on black and white tennis shoes.

Between 10:30 and 11:00 p.m., Officer Warren Pichard saw Hooper carrying an "almost transparent" plastic bag about four blocks from the Omni. Noting that the bag appeared to contain a gun, Pichard got out of his car, identified himself as a police officer, and asked to speak with Hooper. According to Pichard, "[a]s soon as [he] opened [his] door and started to get out and voice that [he] was a police officer, [Hooper] immediately took flight." Pichard chased Hooper over two fences and through a backyard before he caught him. After catching Hooper, Pichard found a gun in the bag and also saw a wallet about six inches from Hooper's foot. Pichard picked up the wallet, determined that it did not belong to Hooper, and called his dispatcher to check on reported robberies in the area. At that point, he learned about the Wilt robbery, which had been reported ten to twenty minutes before he caught Hooper.

Pichard transported Hooper to the police station where the Wilts had been taken and turned the case over to Detective D. O. White. Detective White showed Wilt the wallet found near Hooper. Wilt identified the wallet as his and noted that nothing had been taken from it. According to Wilt, White then asked him to look at Hooper, who was sitting alone in the back of the police car. Based on Hooper's face and clothing, Wilt identified Hooper as the robber. At trial, Wilt similarly identified Hooper as the robber and testified that the gun found in Hooper's possession was the gun used during the robbery. Wilt's son also identified Hooper on the night of the robbery and at trial.

Hooper testified and denied involvement in the robbery. According to Hooper, an unidentified man ran past him while he was walking down the street and threw a plastic bag at him. Hooper testified that as he picked up the bag, which contained a gun, a hat, and Wilt's wallet, police officers arrived on the scene. Frightened, Hooper dropped the bag and ran. The jury apparently disbelieved Hooper's version of events and found him guilty of armed robbery.

1. Hooper first argues that the trial court erroneously denied his motion to suppress evidence because Officer Pichard lacked a reasonable, articulable suspicion under *Terry v. Ohio*[1] to initially stop him.

---

[1] 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968).

As stated in Hooper's brief, his argument focuses on "the point [at] which [Pichard first] sought to detain [him], not when [he] ran."[2]

At the hearing on the motion to suppress, Pichard testified that when he approached Hooper, he was in an unmarked police car without emergency lights. He opened the car door, identified himself as a police officer, and asked to speak with Hooper. Pichard explained that having conversations with citizens is a normal part of his police duties. Hooper, however, immediately ran from the scene.

Hooper did not testify at the hearing or present any other evidence about Pichard's initial approach. The undisputed evidence, therefore, showed that Pichard's effort to speak with Hooper was not a *Terry* stop, but merely a first-tier police-citizen encounter involving no coercion or detention.[3] Pichard did not need a reasonable suspicion to speak with Hooper under these circumstances because "even when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual; ask to examine the individual's identification; and request consent to search — as long as the police do not convey a message that compliance with their requests is required."[4] Accordingly, the trial court did not err in refusing to suppress evidence based on Pichard's initial contact with Hooper.

2. Hooper also asserts that his pre-trial identification in a one-on-one showup should have been excluded as impermissibly suggestive. We disagree.

We apply a two-part test to assess the admissibility of pre-trial identifications.[5] First, we determine whether the identification procedure was impermissibly suggestive.[6] If it was, we then "consider the totality of the circumstances to determine whether a very substantial likelihood existed of irreparable misidentification."[7] In making this determination, we consider the witness' opportunity to view the suspect at the time of the offense, the witness' degree of attention, the accuracy of the witness' prior description, the witness' level of certainty, and the length of time between the crime and the identification.[8] Furthermore, we construe the evidence most favorably to

---

[2] On appeal, Hooper does not challenge his detention or arrest *after* he ran from Officer Pichard. We note, however, that once Hooper ran, Pichard acted reasonably in pursuing him. See *State v. Burks*, 240 Ga. App. 425, 427 (1) (523 SE2d 648) (1999) ("After the initial attempt to stop, flight in connection with other circumstances may be sufficient probable cause to uphold a warrantless arrest or search.") (punctuation omitted).

[3] See *Gary v. State*, 244 Ga. App. 535, 536 (1) (536 SE2d 192) (2000).

[4] Id.

[5] *Salazar v. State*, 245 Ga. App. 878 (1) (539 SE2d 231) (2000).

[6] Id.

[7] Id. at 879.

[8] *Semple v. State*, 271 Ga. 416, 418 (2) (519 SE2d 912) (1999); see also *Salazar*, supra.

uphold the judgment and factual findings of the trial court.[9]

In making its ruling, the trial court assumed that the showup was inherently suggestive, primarily because Wilt and his son knew that Wilt's wallet had been recovered from Hooper before they identified him as the robber. The record also shows that, before the identification, Wilt learned that a gun had been found on Hooper.[10] In addition, Wilt's son testified that he heard his father identify Hooper as the robber before he looked at and identified Hooper. Despite this suggestive procedure,[11] the trial court concluded that the Wilts' identification was reliable. We find no error.

At the hearing, both Wilt and his son testified that the area where the robbery occurred was well lit and that Hooper was clearly visible. Although Wilt saw Hooper's face for only one to two seconds, he testified that his attention was concentrated on that face. Wilt's son indicated that he focused on Hooper's face for ten seconds. Wilt and his son also expressed certainty about their identification, which took place less than two hours after the robbery, and testified that they felt no police pressure to identify Hooper. As explained by Wilt, Detective White told him to look at Hooper "and see if that's the person that mugged [him]."

Detective White testified that he told Wilt that Hooper "may or may not be the person" who robbed him. White noted that, during the showup, Wilt expressed no hesitancy or uncertainty about his identification. Although White could not remember whether Wilt's son participated in the identification, Wilt confirmed that his son identified Hooper as the robber. Finally, as Detective White testified, the description the Wilts gave police generally fit Hooper.[12]

Under the totality of these circumstances, the evidence supported the trial court's conclusion that there was no substantial likelihood of irreparable misidentification. Accordingly, the trial court did not err in denying Hooper's motion to suppress the pre-trial

---

[9] Self v. State, 245 Ga. App. 270, 272 (2) (537 SE2d 723) (2000).

[10] In his brief, Hooper claims that Wilt saw the gun before the identification. Wilt testified, however, that he identified Hooper first, then saw the gun.

[11] See Holbrook v. State, 209 Ga. App. 301, 302 (1) (433 SE2d 616) (1993) ("One-on-one showups have been held to be inherently suggestive, especially where, as here, the accused is a lone suspect who is obviously in custody, surrounded by uniformed police officers, and no precaution is taken to ensure the integrity of the identification process.") (citations and punctuation omitted).

[12] Hooper argues that he was younger than the robber Wilt described to the police. As an initial matter, it is not clear from the transcript that Wilt provided an age description to police on the night of the robbery. Furthermore, even if Wilt inaccurately estimated the robber's age, that mistake did not require the trial court to exclude the identification evidence. See Huff v. State, 239 Ga. App. 83, 85-86 (1) (519 SE2d 263) (1999) (no substantial likelihood of misidentification; although victim erroneously described female assailant as a male, the description was otherwise accurate).

showup identification.[13]

3. Hooper also argues that the trial court erroneously denied his motion for new trial based on the State's failure to provide him with exculpatory evidence. Again, we disagree.

The record shows that following trial, the State found a booking photograph of Hooper that it had not turned over to the defense. The prosecutor contacted Hooper's trial counsel and informed her about the photo. Hooper claims that the photograph, which shows him wearing a light-colored shirt, supported his testimony at trial and undercut the identification evidence. According to Hooper, he was entitled to this photograph under *Brady v. Maryland*,[14] and the State's failure to disclose it requires a new trial.

To succeed in his *Brady* claim, Hooper must prove

(1) that the State possessed evidence favorable to the defense; (2) that [he] did not possess the evidence nor could he obtain it himself with any reasonable diligence; (3) that the prosecution suppressed the favorable evidence; and (4) that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different.[15]

Hooper cannot meet his burden simply by showing that the undisclosed information *might have* helped his defense or affected the trial's outcome.[16] Rather, he must prove " 'that the evidence withheld from him so impaired his defense that he was denied a fair trial within the meaning of the *Brady* rule.' "[17]

Hooper has not made the requisite showing here. At trial, Hooper testified that he was wearing a white shirt and no jacket on the night of the robbery. He argues that because his defense revolved around misidentification, the photograph, which corroborated his testimony that his clothing differed from the dark clothes worn by the described assailant, was material to the trial. Four witnesses, however, testified that Hooper was, in fact, wearing dark clothing at the time of his arrest, undermining his claim that the clothing he wore that night differed from the robber's clothing. Officer Pichard

---

[13] See *Self*, supra at 273 (2) ("[T]he trial court's determination that there was, under the totality of the circumstances, no likelihood of irreparable misidentification is supported by the evidence, is not clearly erroneous, and is therefore affirmed."); see also *Holbrook*, supra (although identification procedure was impermissibly suggestive, no substantial likelihood of misidentification found).

[14] 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963).

[15] *Zant v. Moon*, 264 Ga. 93, 100 (3) (440 SE2d 657) (1994).

[16] *Williams v. State*, 224 Ga. App. 368, 371 (7) (481 SE2d 535) (1997).

[17] Id.

and Detective White testified that Hooper had on dark clothes when police took him into custody. Pichard further testified that Hooper's dark clothes included a long-sleeve jacket. Wilt stated at trial that he identified Hooper during the showup based on Hooper's face *and* his dark-colored clothes. Similarly, Wilt's son testified that, at the showup, Hooper had on the same dark clothes as the robber.

Furthermore, at the hearing on his motion for new trial, Hooper presented little evidence regarding when or under what circumstances the photograph was taken. His trial counsel simply testified that "[b]ased on [her] experience and . . . what [the] photograph look[ed] like," it was taken on the night of the robbery, as he was booked into jail. She further stated that police typically take a person's photo immediately after arrest.

Other than this general testimony, Hooper offered no evidence about the circumstances surrounding this particular photo or whether it accurately depicted the clothing he was wearing at the time of the robbery. Indeed, given Officer Pichard's testimony that Hooper was wearing a jacket, the photograph does not necessarily conflict with the State's evidence or corroborate Hooper; Hooper may have simply taken off a dark-colored jacket to reveal a white shirt prior to the photo. In light of the significant witness testimony about Hooper's clothing at the time of his arrest, as well as the dearth of information about the photograph, we do not find this photograph material. Hooper has not demonstrated a reasonable probability that the outcome of his trial would have been different had the State disclosed the photograph. Accordingly, the trial court did not err in denying his motion for new trial on this ground.[18]

4. Finally, Hooper argues that the trial court erroneously denied his motion for new trial based on ineffective assistance of counsel. According to Hooper, his trial counsel was ineffective because she failed to request and obtain the photograph discussed above. To support his ineffective assistance of counsel claim, Hooper must show that his counsel's performance was deficient and that the deficiency prejudiced his defense.[19] Prejudice arises where " 'there is a reasonable probability the jury would have reached a different verdict, absent the error of counsel.' "[20]

Even assuming that trial counsel was deficient, Hooper's ineffective assistance of counsel claim cannot succeed because he has not shown prejudice. As we found in Division 3, Hooper failed to establish a reasonable probability that the outcome of his trial would have been different if the booking photograph had been available to him.

[18] See *Brooks v. State*, 182 Ga. App. 144, 145-146 (1) (355 SE2d 435) (1987).

[19] *Watson v. State*, 243 Ga. App. 636, 637 (534 SE2d 93) (2000).

[20] Id.

Accordingly, the trial court did not err in denying his motion for new trial based on ineffective assistance of counsel.[21]

*Judgment affirmed. Johnson, P. J., and Ellington, J., concur.*

DECIDED SEPTEMBER 13, 2001.

*Carl P. Greenberg, Derek M. Wright,* for appellant.
*Paul L. Howard, Jr.,* District Attorney, *Anna E. Green,* Assistant District Attorney, for appellee.

---

[21] Id. ("We will affirm a trial court's finding that counsel was effective unless it is clearly erroneous.").

