A92A2426. LEDFORD v. THE STATE.
(429 SE2d 124)

ANDREWS, Judge.

Ledford was convicted of one count each of armed robbery, reckless driving, and attempting to elude a police officer and he appeals the judgment of conviction and sentence entered on the jury's verdict.

Viewed in favor of the verdict, the evidence was that on November 18, 1991, Ledford drove to a local mall in his mother's black Escort with red stripes. He saw the victim walking to her car and drove up behind the car where he stopped, exited his car, pulled a pistol on her, and took her purse containing about $40.[1] Two other women witnessed the robbery and one drove after the Escort, reporting back to the police the license number was either FLE 201 or FLE 901. The officer responding to the scene put out a lookout for the car and two Sheriff's deputies driving the marked K-9 unit spotted the car bearing license number FLE 901, activated the siren and blue lights on top of the unit, and began pursuit. The chase continued on Satellite Boulevard at speeds up to 80 mph. Attempting to make a turn, the Escort spun 180 degrees and came to a momentary stop in front of a couple waiting to make the left turn. The couple had been sitting at the intersection and noticed nothing out of the ordinary until the Escort sped away after spinning, at which time they saw a pocketbook in the intersection where the Escort had been. They retrieved the purse and the gun which was lying in front of it and took them to the police. The officers had cornered the Escort on a cul-de-sac and arrested Ledford, its only occupant. In his pocket, the officers found folded cash consisting of one twenty, one ten, one five and four one-dollar bills.

---

[1] Because she had recently been to the bank and shopping, she recalled that she had one twenty, one ten, one five and four or five one-dollar bills.

Ledford was immediately taken back to the mall where the victim identified him and her purse. Ledford's defense was alibi, contending that he was home eating pizza with his mother and sister at the time of the robbery and was mistakenly stopped as he was driving to get a part for his car.

1. After the jury was struck, Ledford, who is white[2] as was the victim, made a timely challenge to the striking of three black jurors based on *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986). See *Georgia v. McCollum*, 505 U. S. ____ (112 SC 2348, 120 LE2d 33) (1992).

The court stated for the record the composition of the seated jury. As originally selected from a panel of 42, including 8 blacks,[3] or 19 percent, the seated jury was composed of 9 whites and 3 blacks, or 25 percent. The State used five of its ten peremptory strikes on blacks.

Since the court required the prosecution to explain its strikes, the issue of whether a prima facie showing of discrimination had been made has become moot. *Lewis v. State*, 262 Ga. 679 (2) (424 SE2d 626) (1993).

The court correctly refused to accept the explanation for the strike of juror Blasingame based upon his membership in the NAACP and he was seated on the jury, resulting in four black jurors. *Randolph v. State*, 203 Ga. App. 115, 116 (3) (416 SE2d 117) (1992).

The two strikes here alleged to be racially motivated were jurors Veal and Johnson. The reasons given by the State for these strikes were that both jurors had sons near the same age as Ledford, who was 26 and single, and that as a "general proposition," the State struck persons close in age or who had single sons close in age to Ledford. Juror Veal, the fourth strike exercised by the State, had single sons ages 28 and 30. Also, Juror Johnson, the sixth State strike, had a single son age 26. The first two strikes used by the State were on nonminority jurors as were the last three. The trial court found these explanations racially neutral.

" 'Once the prosecution establishes a neutral explanation related to the particular case to be tried, the trial court then will have the duty to determine if the defendant has established purposeful discrimination. [Cit.] The trial court's findings are, of course, entitled to great deference, . . . and will be affirmed unless clearly erroneous.

---

[2] Nonetheless, since *Powers v. Ohio*, 499 U. S. ____ (111 SC 1364, 113 LE2d 411) (1991), members of the white majority have standing to raise the exclusion of members of a minority from the jury.

[3] Although Ledford also asserted that one juror was Hispanic, there is no indication of this in the record, except for her surname and the court found that was not determinative of her ethnicity.

*Gamble v. State*, 257 Ga. 325, 327 [(5) (357 SE2d 792) (1987)]. Because the U. S. Supreme Court has cautioned us that the trial judge's findings in the context under consideration here largely will turn on evaluation of credibility . . . a reviewing court ordinarily should give those findings great deference. [Cit.]' . . . [Cits.]" *Kincey v. State*, 191 Ga. App. 300 (1) (381 SE2d 439) (1989).

"Under the circumstances, age was a 'neutral' explanation which was 'related to the case to be tried.' [Cit.]" *Strozier v. Clark*, 206 Ga. App. 85, 87 (5) (424 SE2d 368) (1992). There was no error in the denial of the *Batson* motion.

2. The second enumeration is that the court erred in "denying Appellant's Motion for a Directed Verdict as there was a fatal variance between the evidence presented as to the manner in which the offense was committed and the manner specified in the indictment."

This ground, however, is not mentioned in the motion for directed verdict made at trial and therefore there is nothing for us to review in this regard. OCGA § 17-9-1; see *Horton v. State*, 194 Ga. App. 797, 798 (1) (392 SE2d 259) (1990).

3. Finally, Ledford complains of the trial court's instruction to the jury on the elements of armed robbery. Ledford acknowledges that the court charged the language of OCGA § 16-8-41 (a). Since he was indicted for robbery by "use of an offensive weapon, to wit: a pistol," he contends that the evidence, showing it was a starter pistol incapable of firing live bullets, proved a "replica," and instructing the jury as to the alternative methods of violating the statute was error.

There was no error. According to the evidence, the pistol had the appearance of an actual handgun and would fire blanks. *Pettway v. State*, 204 Ga. App. 804 (420 SE2d 619) (1992); *Morgan v. State*, 191 Ga. App. 226 (2) (381 SE2d 402) (1989).

*Judgment affirmed. Birdsong, P. J., and Beasley, J., concur.*

DECIDED MARCH 9, 1993.

Ronnie K. Batchelor, for appellant.

Thomas C. Lawler III, District Attorney, Debra K. Turner, Assistant District Attorney, for appellee.