A96A1208. McKENZIE v. THE STATE.
(476 SE2d 868)

JOHNSON, Judge.

Raleigh McKenzie was convicted on all counts of a ten-count indictment charging him with child molestation, incest, rape, and aggravated sexual battery. He appeals following the denial of his motion for new trial. We remand.

1. McKenzie challenges the sufficiency of the evidence. "On appeal the evidence must be viewed in the light most favorable to support the verdict, and appellant no longer enjoys a presumption of innocence; moreover, an appellate court . . . does not weigh the evidence or determine witness credibility." (Citation and punctuation omitted.) *Powell v. State*, 218 Ga. App. 556 (462 SE2d 447) (1995). All three victims, McKenzie's daughters, testified at trial that he had committed the charged acts. Other witnesses also testified that the girls had said McKenzie had molested them. This evidence is sufficient. See *Carr v. State*, 214 Ga. App. 367 (1) (448 SE2d 33) (1994).

2. McKenzie alleges that his trial counsel rendered him ineffective assistance, violating the guarantees of the Sixth Amendment to

the United States Constitution and of Ga. Const., Art. I, Sec. I, Par. XIV. McKenzie has cited no authority, however, for his Georgia constitutional claims. We deem them abandoned and consider the Sixth Amendment claims only. See *Wilson v. State*, 199 Ga. App. 900, 901 (406 SE2d 293) (1991).

In evaluating ineffectiveness of counsel claims, this Court uses the test set out in *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), which requires a two-part showing. The first part requires the convicted defendant to show that his trial counsel's representation "fell below an objective standard of reasonableness." Id. at 688. The defendant must also "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' [Cit.]" Id. at 689. The second part of the *Strickland* test requires the defendant to show that any deficiency in trial counsel's performance resulted in prejudice to his defense, meaning "a reasonable probability (i.e., a probability sufficient to undermine confidence in the outcome) that, but for counsel's unprofessional errors, the result of the proceeding would have been different (104 SC 2068)." (Citation and punctuation omitted.) *Jowers v. State*, 260 Ga. 459, 462 (2) (396 SE2d 891) (1990).

(a) The first alleged deficiency is the mishandling of two defense witnesses' subpoenas. The subpoenas were quashed because they were served less than 24 hours before the witnesses were to testify. See OCGA § 24-10-25 (a). As a result, the witnesses did not testify until the sentencing hearing. At the hearing on the new trial motion, trial counsel testified that McKenzie asked to serve the subpoenas himself because the witnesses were friends of his. Trial counsel agreed to the request, gave McKenzie the subpoenas two or three days in advance, and told him of the 24-hour requirement for service. Though McKenzie and his brother allege counsel gave him the subpoenas the night before the witnesses were to testify, the trial court's findings of fact in its order denying the new trial motion reflect that it believed trial counsel's testimony. "It is the province of the trial court to weigh the credibility of the witnesses and unless clearly erroneous, its findings of fact will be upheld on appeal." (Citation omitted.) *Arline v. State*, 264 Ga. 843, 844 (2) (452 SE2d 115) (1995). The facts as found by the trial court do not establish that McKenzie's counsel's conduct fell below an objective standard of reasonableness. Moreover, the witnesses would have testified only to McKenzie's good character and had no knowledge of the particular acts with which he was charged; McKenzie thus has not shown a reasonable probability that their testimony would have changed the trial's outcome. This claim therefore presents no ground for reversal.

(b) McKenzie also maintains that his trial counsel were ineffective when they failed adequately to respond to inadmissible testi-

mony by two of the State's witnesses.

(i) When counsel for both sides were through questioning Vernon Lestagez, the witness on his own initiative implored the jury, "Don't let him get away with it. That's all I have got to say." McKenzie's counsel immediately objected, and the judge sustained the objection and instructed the jury to disregard the remark. McKenzie's counsel did not move for a mistrial and gave two reasons for not doing so in the evidentiary hearing on the new trial motion: First, that she considered the jury an excellent one for McKenzie and doubted she could get another one as good at a new trial; second, she noted that the jury had laughed at Lestagez during his testimony, leading her to conclude they would give little weight to anything he had to say. This decision can be considered sound trial strategy and thus did not constitute ineffective assistance.

(ii) Another witness was asked whether the victims had admitted to her that they fabricated the charges against their father. She replied that they had not and further volunteered, "I do not think that they made that up because, personally, I have went through some of the stuff that they went through but I haven't gone through it with my father and for me to make up something like that —." At that point she was stopped by McKenzie's counsel's objection. Before the court ruled on the objection, the prosecutor said he had no further questions for the witness, and she was excused. The trial court never ruled on the objection or gave curative instructions, and McKenzie's counsel did not request any curative action. At the later evidentiary hearing, counsel explained that they did not consider the comment influential, and that they did not want a mistrial because they were so pleased with the composition of the jury. Not asking for a mistrial can be considered sound trial strategy.

(c) McKenzie contends his trial counsel failed to communicate with each other and with him before trial, failed to interview important witnesses, and otherwise failed adequately to prepare for trial. These failures, he alleges, resulted in the following testimony and trial court rulings that prejudiced his defense:

(i) A ruling allowing the State to use evidence of similar transactions. The indictment charged McKenzie with molesting his daughters from 1991 through 1994. Two of the girls testified, however, that he had begun molesting them when they were much younger. The prosecutor had served upon McKenzie's lead counsel a pretrial notice, pursuant to Uniform Superior Court Rules 31.1 and 31.3 (A), that he intended to introduce this similar transaction testimony. When the court held its hearing under USCR 31.3 (B), however, it became apparent that McKenzie's lead counsel had expected to receive a brief on the issue from the State and that his co-counsel was not even aware of the notice the State had served.

No amount of preparation, coordination, or skill on the part of trial counsel, though, would have changed the fact that the similar transaction evidence was admissible because it satisfied the three-part test set out in *Williams v. State*, 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991). "[T]he sexual molestation of young children, regardless of sex or type of act, is [of] sufficient similarity to make the evidence admissible. . . . [T]he exception to the general rule that evidence of independent crimes is inadmissible has been most liberally extended in the area of sexual offenses." (Citations and punctuation omitted.) *Adams v. State*, 208 Ga. App. 29, 32 (2) (a), (b) (430 SE2d 35) (1993). It is not necessary to introduce a conviction of the other crimes in order to adduce testimony that they occurred. *Grier v. State*, 218 Ga. App. 637, 639 (2) (463 SE2d 130) (1995). McKenzie has failed to show prejudice from his counsel's performance in this regard.

(ii) The trial court's ruling that McKenzie could not introduce evidence of the victims' purported sexual activity with someone other than him. Before the first witness was called, the prosecutor made an oral motion in limine to exclude all evidence of any sexual activity by the girls, apart from the alleged molestation. McKenzie's counsel argued that the girls had run away to the home of the Lestagez family and alleged that their father had abused them, because one or two of the girls wished to continue sexual relationships with the Lestagez sons, to which McKenzie and his wife were opposed. They maintained that evidence of the sexual relationships with the Lestagez sons was admissible to show a motive for making false allegations of abuse against McKenzie. The trial court granted the State's motion. Defense counsel did not renew their objection or move for a mistrial.

Later in the trial, a pediatrician who examined all three girls testified that two of them had transections to their hymens, which were consistent only with vaginal penetration. Defense counsel should have expected this testimony, because they had previously cross-examined the pediatrician at a juvenile court proceeding. Defense counsel did not, however, argue to the court that allegations of the girls' other sexual activity should have been admitted to explain the doctor's physical findings and rebut the inference that the transections were caused by McKenzie's molestation. "[W]here the State introduces medical testimony indicating that the child has been sexually abused . . ., evidence that the victim may have been molested by someone other than the accused may be admissible to establish other possible causes for the . . . medical symptoms exhibited by the child." (Citation omitted.) *Chambers v. State*, 213 Ga. App. 284, 286 (1) (b) (444 SE2d 833) (1994). Appellate counsel maintains that trial counsel's failure to make this argument and ask for an in camera opportunity to offer proof of their allegations constituted

ineffective assistance.

Even if counsel's failure to make this argument fell below an objective standard of reasonable performance, reversal is not warranted on this ground because McKenzie has not shown prejudice. According to trial counsel's testimony at the hearing on the new trial motion, the only evidence on this subject was McKenzie's own speculation that one of the girls had had sex with a Lestagez boy because she had stayed out late with him, and because one of the other victims said her half-sister may have dated him. This does not prove the victim had engaged in other sexual relations; proves nothing with respect to the other daughter with a transected hymen; and was partially cumulative of testimony by McKenzie. Perhaps the weakness of this evidence explains trial counsel's acquiescence in the ruling: McKenzie has not shown that his speculations should have been admitted even with an in camera hearing. This Court therefore cannot hold that the failure to press for an in camera hearing, and to argue the relevance of the speculations to the physical findings, prejudiced McKenzie.

(iii) The testimony of several witnesses regarding treatment the victims received at the hands of Vernice McKenzie, mother of two of them and stepmother of the third. The victims testified that Ms. McKenzie had struck two of them with household objects such as pots and pans and an electrical cord. Other witnesses also said the girls had complained of physical abuse by Ms. McKenzie, including being punched and being struck with a radio and a hair drier. McKenzie's trial counsel did not object to this testimony. McKenzie's appellate counsel maintains that this testimony destroyed Vernice McKenzie's credibility and that her credibility was crucial to the defense because she testified, as one living in the household where the molestations allegedly occurred, that she did not believe the accusations.

McKenzie's lead trial counsel testified at the new trial hearing that she did not object to the testimony of Ms. McKenzie's outbursts because it supported her theory of the defense: That the girls ran away from home and fabricated the molestation allegations in order to escape the harsh discipline of their home. In view of the fact that this Court has previously reversed at least one statutory rape conviction on similar underlying facts, this was a viable strategy. See *Wilson*, supra, 199 Ga. App. at 902 (1).

McKenzie's appellate counsel contends, however, that the lead trial lawyer's theory of defense was at odds with the theory of her co-counsel and that the evidence concerning Vernice McKenzie that supported the lead attorney's theory tended to contradict the co-counsel's. The record does not support this contention. McKenzie's other trial lawyer testified at the evidentiary hearing that his theory

of the case was to show that Raleigh McKenzie, though a disciplinarian, was himself a very hard worker and decent man who would never molest his daughters. This second theory does not contradict the first and is not directly weakened by the evidence of Vernice McKenzie's outbursts. McKenzie has not shown that his trial counsel was ineffective in this regard. Compare *Ross v. Kemp*, 260 Ga. 312 (393 SE2d 244) (1990).

McKenzie has not shown prejudice resulting from any deficiency in his trial counsel's conduct and so has not established that his counsel was ineffective.

3. McKenzie enumerates several errors in the trial court's reseating on the petit jury a member of the venire whom McKenzie's counsel had peremptorily stricken. Because the trial court's findings on the record are insufficient to provide this Court with a basis for review of the trial court's action, a remand for further findings is required.

During voir dire, McKenzie's counsel used 11 of their 12 strikes to remove white women from the jury. The prosecutor then alleged that the strikes were racially motivated, in violation of *Georgia v. McCollum*, 505 U. S. 42 (112 SC 2348, 120 LE2d 33) (1992), which applied the rationale of *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986) to the peremptory strikes of criminal defendants. The trial court required McKenzie's counsel to explain the reasons for each of the 11 strikes and accepted as race-neutral all the reasons offered except those in support of the strike of potential juror Rice.

McKenzie's lawyer said Rice had been struck because she had a daughter, had been party to a lawsuit involving money, had no grandchildren, and had a relative who had been arrested on drug charges; she added, "I didn't check to see if she was white." The trial court observed that a black male with daughters of similar ages and who had been party to a lawsuit had not been struck, and said she did not find the proffered reasons to be race-neutral. As in *Taylor v. State*, 219 Ga. App. 475, 477 (2) (465 SE2d 473) (1995) and *Ledford v. State*, 207 Ga. App. 705, 706 (1) (429 SE2d 124) (1993), the judge reseated the challenged venire member on the petit jury.

(a) The issue of whether McKenzie's peremptory strikes were made with an intent to discriminate on the basis of sex, in violation of *J. E. B. v. Alabama*, 511 U. S. __ (114 SC 1419, 128 LE2d 89) (1994), was mentioned in the briefs. This issue was neither argued to nor ruled on by the trial court, however, and thus has been waived. "If counsel desires to preserve an objection upon a specific point for appeal, the objection must be made at trial upon that specific ground." (Citations and punctuation omitted.) *Norman v. State*, 197 Ga. App. 333, 334 (2) (398 SE2d 395) (1990).

(b) McKenzie claims the trial court erred in finding that the prosecution had established a prima facie case of racial discrimination in his use of peremptory strikes. McKenzie's "overwhelming use of peremptory strikes to exclude [jurors of one race . . .] establishes a prima facie showing of discrimination. . . ." *Buchanan v. State*, 215 Ga. App. 143, 145 (3) (449 SE2d 660) (1994). This claim is without merit.

(c) McKenzie also alleges that the trial court erred in finding that he did not produce racially nondiscriminatory reasons for striking Rice; in shifting the ultimate burden of persuasion on the question of racial discrimination to McKenzie; and in reseating Rice on the petit jury.

When the court reseated Rice, McKenzie's counsel protested that the strike had not been racially motivated. The judge responded, "I didn't say it was racially motivated. I said it was not race neutral. There is a difference." The court's written order denying McKenzie's motion for new trial contained no further explanation of its *McCollum* findings.

While it may be relevant that a strike's impact is "not race neutral," the issue of whether the strike was "racially motivated" must still be reached. "[D]isparate impact should be given appropriate weight in determining whether the [striking party] acted with a forbidden intent, but it will not be conclusive in the preliminary race-neutrality step of the *Batson* inquiry. . . . Unless the [striking party] adopted a criterion with the intent of causing the impact asserted, that impact itself does not violate the principle of race neutrality." *Hernandez v. New York*, 500 U. S. 352, 362 (111 SC 1859, 114 LE2d 395) (1991) (plurality opinion).

Nor should this Court attempt to assess racial motivation on appeal. The issue of whether a striking lawyer acted with discriminatory intent is one of fact for resolution by the trial court, who observed the lawyers' demeanor at voir dire and, in this case, at the new trial motion hearing. *Batson*, supra at 476 U. S. 98, fn. 21.

Because the trial court's discrimination findings did not answer the controlling question, this case is remanded solely to allow the trial court to enter written findings on the issue of racially discriminatory intent in the striking of Rice. See *Weems v. State*, 262 Ga. 101, 103 (3) (416 SE2d 84) (1992). The trial court may conduct a hearing if it deems one necessary or advisable. If the trial court finds upon remand that the strike was racially motivated, the conviction will stand affirmed. If the trial court finds no racially discriminatory intent, the conviction will stand vacated and a new trial will be required. Either party may file a notice of appeal from the trial court's ruling on remand; any such appeal will deal only with whether McKenzie's strike of Rice was racially motivated. See *Lewis*

*v. State*, 262 Ga. 679, 681 (2) (424 SE2d 626) (1993).

*Judgment conditionally affirmed. Case remanded with direction.*
*McMurray, P. J., and Ruffin, J., concur.*

DECIDED OCTOBER 9, 1996.

*Drew Findling, Elizabeth L. G. Rankin*, for appellant.
*J. Tom Morgan, District Attorney, Desiree S. Peagler, Jeffrey H.*
*Brickman, Assistant District Attorneys*, for appellee.