### A03A1668. SHELL v. THE STATE.
(591 SE2d 450)

BLACKBURN, Presiding Judge.

Following a jury trial, Christy Dale Shell appeals the jury's verdict finding her guilty of kidnapping[1] and criminal attempt to commit burglary,[2] contending that the trial court erred by: (1) denying her *Batson v. Kentucky*[3] motion regarding gender bias and (2) denying

---

her request to be sentenced as a first offender. For the reasons set forth below, we affirm.

1. Shell argues that the trial court erred in denying her gender-based *Batson* motion. Prior to the jury being sworn, Shell challenged two of the prosecutor's strikes, alleging that the prosecutor struck two women improperly. We disagree.

The equal protection clause of the United States Constitution prohibits discrimination in jury selection on the basis of gender. *J. E. B. v. Alabama.*[4] The three-part test utilized to review claims of race discrimination under *Batson* is also applied to analyze gender discrimination claims. *Sheets v. State.*[5] "Initially, the opponent of a peremptory challenge must make out a prima facie case of discrimination." Id.

> Once a prima facie case of discrimination is made, the proponent of the strike is required to set forth a race-neutral, case-related, clear and reasonably specific explanation for the exercise of its strikes. An explanation is not race-neutral if it is based on a characteristic that is peculiar to any race or on a stereotypical belief. At this point, the proponent of the strike need not proffer an explanation that is persuasive or even plausible — all that is required is an explanation that is facially race-neutral. The trial court must then determine, considering the totality of the circumstances, whether the opponent of the strikes has shown that the proponent was motivated by discriminatory intent in the exercise of his strikes. The opponent of the strikes may carry his burden of persuasion by showing that similarly situated jurors of another race were not struck or that the proponent's race-neutral reason for a strike is "so implausible or fantastic that it renders the explanation pretextual."

(Footnotes omitted.) *Barnes v. State.*[6]

"The trial court's decision on a *Batson* motion rests largely upon assessment of the prosecutor's state of mind and credibility; it therefore lies peculiarly within a trial judge's province." (Punctuation omitted.) *Jones v. State.*[7] "A trial court's findings on whether the opponent of the strike has met his burden of persuasion is entitled to great deference and will be affirmed unless clearly erroneous." *Barnes,* supra.

---

[4] *J. E. B. v. Alabama,* 511 U. S. 127 (114 SC 1419, 128 LE2d 89) (1994).
[5] *Sheets v. State,* 244 Ga. App. 304 (1) (535 SE2d 312) (2000).
[6] *Barnes v. State,* 269 Ga. 345, 349 (6) (496 SE2d 674) (1998).
[7] *Jones v. State,* 261 Ga. App. 698, 701 (2) (583 SE2d 546) (2003).

The record shows that the prosecutor accepted 12 women as potential members of the jury. Shell struck seven of those twelve, resulting in a jury consisting of seven men and five women. The prosecutor struck three men and three women. Shell challenged two of the prosecutor's strikes of potential female jurors, alleging they were gender-biased.

The prosecutor explained that both challenged strikes were based on similar reasoning. The first strike was motivated by the fact that the potential juror in question was scheduled to move out of state within the month and was scheduled to look for a place to live and be introduced to a client in her new city in the next week. The second strike was motivated by the fact that the potential juror in question was also moving out of state and was scheduled to start a job in her new city in the next week. The prosecutor explained that she struck these two potential jurors because she feared they would be "distracted" or "preoccupied" by their impending moves.

On appeal, Shell challenges the trial court's denial of her *Batson* motion arguing that the prosecutor's explanations were pretextual. Shell argues that the prosecutor's explanations were in "direct contradiction" to the statements of the two potential jurors. Shell cites *Sheets*, supra, arguing that it requires a finding that the trial court erred in denying her *Batson* motion. We do not agree.

*Sheets* does not support Shell's argument. In that case, counsel explained a challenged strike as based on the fact that the potential juror worked at a store where the defendant shopped so she "must have been acquainted" with the defendant. *Sheets*, supra at 305. The trial court in *Sheets* found that the potential juror had not stated that she knew the defendant. Id. Because there was no transcript of the voir dire in *Sheets*, this court was forced to "assume" that the trial court was correct. Id.

In contrast, we have a transcript of the voir dire in this case. The transcript does not contain any statements by either potential juror that directly contradict the prosecutor's explanation of her strikes. Moreover, the issue in *Sheets* was whether the explanation offered contradicted established events. In contrast, the explanation offered here dealt with the future state of mind of the potential jurors, not with established facts. Shell has not carried her burden to show that the prosecutor's explanation was "so implausible or fantastic" as to render it pretextual. The trial court did not err in denying Shell's *Batson* motion.

2. In her second enumeration of error, Shell argues that the trial court erred by denying her request for first offender treatment. "[T]he trial court is not required to render such a first offender status merely because it is requested even where no previous offense is shown, and the trial court may give in its discretion any sentence

prescribed by law for the offense." *Todd v. State*.[8] We vacate and remand only when a trial court refuses to consider first offender treatment as a possible sentence. *Horton v. State*.[9] This is because "a trial court's use of a mechanical sentencing formula or policy as to any portion of a sentence amounts to a refusal to exercise its discretion and therefore is an abdication of judicial responsibility." (Punctuation omitted.) Id. To require remand, "there must be a clear statement in the record that constitutes either a general refusal to consider such treatment or an erroneous expression of belief that the law does not permit the exercise of such discretion." *Camaron v. State*.[10]

Shell was convicted of kidnapping, a "serious violent offense" as defined by OCGA § 17-10-6.1 (a) (3). Due to this fact, the trial court stated that it did not have the "flexibility" to consider first offender treatment for Shell. The trial court sentenced Shell to the ten-year mandatory minimum sentence required by OCGA § 17-10-6.1 (b).

At the hearing on her motion for new trial, Shell pointed out that because the date of her offense preceded the effective date of the 1998 amendments which added OCGA § 42-8-66[11] to the First Offender Act, the trial court could have afforded her first offender status. See *Fleming v. State*.[12] The state introduced evidence at the hearing which showed that prior to the convictions at issue here, Shell had been convicted of misdemeanor deposit account fraud. The state also introduced evidence which showed that subsequent to the convictions at issue here, Shell had been convicted of felony theft by taking. The trial court refused to modify Shell's sentence to grant first offender status.

Although the trial court's refusal to consider first offender status for Shell based on its belief that such status was not, at that time, available to a person convicted of a serious violent felony would normally require a remand for resentencing, "remand should be principled and necessary, not automatic, delaying, and wasteful of judicial and legal resources." (Punctuation omitted.) *Elrod v. State*.[13] We are not required to remand where such a remand would serve no useful purpose. See *Freeman v. State*.[14] Here, if the trial court afforded Shell first offender status on remand, it could immediately revoke

---

[8] *Todd v. State*, 172 Ga. App. 231 (2) (323 SE2d 6) (1984).

[9] *Horton v. State*, 251 Ga. App. 796, 797 (3) (554 SE2d 812) (2001).

[10] *Camaron v. State*, 246 Ga. App. 80, 82 (2) (539 SE2d 577) (2000).

[11] OCGA § 42-8-66 states: "[t]he provisions of this article shall not apply to any person who is convicted of a serious violent felony as defined in subsection (a) of Code Section 17-10-6.1."

[12] *Fleming v. State*, 271 Ga. 587 (523 SE2d 315) (1999).

[13] *Elrod v. State*, 222 Ga. App. 704, 705 (1) (475 SE2d 710) (1996).

[14] *Freeman v. State*, 244 Ga. App. 393, 397 (2) (535 SE2d 349) (2000).

that status due to Shell's subsequent felony conviction.[15] The trial court did not err in refusing to resentence Shell.

*Judgment affirmed. Ellington and Phipps, JJ., concur.*

DECIDED DECEMBER 4, 2003 — 

*Maurice Brown*, for appellant.
*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Christopher M. Quinn, Assistant District Attorneys*, for appellee.