## A04A1828. YOUNG v. THE STATE.
## A04A1829. WRIGHT v. THE STATE.
### (612 SE2d 118)

ADAMS, Judge.

Jovan Young and Jomandi Wright were jointly tried by jury on charges arising out of an armed robbery of three men. They were convicted and sentenced on eight counts. They now appeal on several grounds.

Construed in favor of the verdicts, the evidence shows that on February 10, 2002, Daniel Hennagir, Douglas Strand, and Bobby Willoughby were leaving a nightclub in Atlanta at about 3:00 or 4:00 a.m., when they were approached by a man in blue or grey who demanded in a hostile manner, "What do you got?" Two other men then appeared, one dressed all in red and the other holding a gun low, close to his knee, showing it to the victims but not pointing it at them. Simultaneously with showing the gun, one of the two said, "You don't understand. We want your money." At this point, the victims understood that it was a robbery. At trial, two of the victims identified the man in blue as Wright and the man in red as Young.

Wright then grabbed Strand's cash and driver's license out of his back pocket. Next, as Hennagir attempted to protect his wallet from Wright and Young, the man with the gun struck him with the gun, which allowed Young to grab the wallet. The three men then ran. Willoughby, who testified that he was "scared to death" during the whole event, had taken his cash out, but in their haste the robbers overlooked it. The incident lasted between one and five minutes.

Police were called immediately. Within a few minutes officers saw two men in the area generally fitting the description. An officer testified that when the men saw the police, they reversed direction but were caught. Officers brought Wright and Young back to the scene, where they were identified as two of the perpetrators. The man with the gun was never apprehended. None of the stolen property was ever recovered.

1. Both appellants contend the trial court erred by rejecting their claims under *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986), that the State exercised its peremptory strikes in a racially and gender-wise discriminatory manner during jury selection. "[I]t is unconstitutional for a prosecutor or defense counsel to exercise a peremptory challenge to a prospective juror because of the juror's race or gender. See *J. E. B. v. Alabama*, 511 U. S. 127, 143 (114 SC 1419, 128 LE2d 89) (1994); *Georgia v. McCollum*, 505 U. S. 42 (112 SC 2348, 120 LE2d 33) (1992)." *Robinson v. State*, 278 Ga. 134, 135 (1) (598 SE2d 466) (2004).

The three-step procedure for analyzing a *Batson* challenge is well known. "The opponent of a peremptory challenge must make a prima

facie showing of [gender or] racial discrimination; the burden of production shifts to the proponent of the strike to give a [gender- or] race-neutral reason for the strike; the trial court then decides whether the opponent of the strike has proven discriminatory intent." (Footnote omitted.) *Chandler v. State*, 266 Ga. 509, 510 (2) (467 SE2d 562) (1996). We affirm the decision of the trial court unless it was clearly erroneous. *Johnson v. State*, 266 Ga. 775, 777 (4) (470 SE2d 637) (1996).

The State used five peremptory challenges to strike juror nos. 5, 7, and 10 (African-American females), juror no. 14 (a Caucasian female), and alternate juror no. 30 (an African-American male). The defendants jointly challenged the release of these jurors citing *Batson*. The State next gave what it claimed were race- and gender-neutral reasons for the challenged strikes, which, for this Court's purposes, renders a preliminary showing of prima facie discrimination moot. *Hernandez v. New York*, 500 U. S. 352, 359 (II) (A) (111 SC 1859, 114 LE2d 395) (1991); *Brannan v. State*, 275 Ga. 70, 75 (5) (561 SE2d 414) (2002). The court then ruled that the State had carried its burden of showing race- and gender-neutral reasons for striking juror nos. 5, 7, 10, and 30. (The court granted the *Batson* challenge as to juror no. 14 on the grounds that the stated reason — that the juror gave the prosecutor a "bad feeling" — was too nebulous and not facially neutral.)

The court then asked the defendants to attempt to carry their burden of showing discriminatory intent with regard to the remaining four jurors. Following the defendants' presentation, the court denied their remaining *Batson* challenges and released juror nos. 5, 7, 10, and 30. Thus, the issue presented is whether, with regard to each of the four challenged jurors, the defendants showed discriminatory intent.

(a) With regard to juror no. 5, the State explained that her father had been falsely accused of murder based on mistaken identity and her brother accused of assault with a deadly weapon. The court held that this reason was facially neutral, and we agree. The defendants countered that the current case did not include an accusation of murder and that juror no. 8, an African-American male, was not struck yet he had a stepbrother who had been accused and convicted of manslaughter. The trial court's conclusion that the defendants did not show discriminatory intent with regard to juror no. 5 was not clearly erroneous. An issue of mistaken identity was raised in this case and the cited facts about the two jurors were significantly different.

(b) With regard to juror no. 7, the State's only explanation for the strike was that the woman was excused because a close relative, her nephew, had been convicted of manslaughter (for an incident that

occurred while playing Russian Roulette) — a gender-neutral reason. The defendants countered that juror no. 8, a male, was not struck yet he had a stepbrother who had been convicted of manslaughter. They also argued that juror no. 9, a white male, was not struck, yet he himself had been convicted of a crime. Without further inquiring of the prosecutor, the court ruled on the challenge, but in its ruling the court incorrectly remembered that the State's explanation was that the juror had been accused of a same crime charged in the present case — aggravated assault or assault with a deadly weapon — and it did not address the arguably similar situations of juror nos. 8 and 9. Based on that incorrect recollection, the court concluded that the defendants had not proven discriminatory intent.

The opponent of a strike may carry his burden of persuasion by showing that similarly situated jurors of another race or gender were not struck. *Barnes v. State*, 269 Ga. 345, 349 (6) (496 SE2d 674) (1998). See also *Shell v. State*, 264 Ga. App. 547, 548 (1) (591 SE2d 450) (2003). The defendants attempted to do so here, yet the court apparently failed to consider the argument, and the State never offered a reason why the two prospective jurors were handled differently. "A prosecutor's failure to explain the apparently disparate treatment of similarly situated [male and female] jurors certainly diminishes the force of [the] explanation for striking a [female] juror." *Ford v. State*, 262 Ga. 558, 559-560 (3), n. 1 (423 SE2d 245) (1992). Furthermore, the judge based her decision on a mistake of fact.

Under these circumstances, a remand is in order. This Court has held that when a trial court does not require the State "to fully explain its use of the peremptory challenges" we will remand the case to permit the prosecutor to do so and to allow the trial court to make findings under *Batson*. *Chunn v. State*, 210 Ga. App. 209, 211 (2) (435 SE2d 728) (1993). See also *McKenzie v. State*, 223 Ga. App. 108, 114 (3) (c) (476 SE2d 868) (1996) (issue remanded where trial court failed to properly consider ultimate question of whether the striking lawyer acted with discriminatory intent).

Therefore, with regard to juror no. 7, we remand the case in order to permit the prosecutor to fully explain the strike and to allow the trial court to make findings under *Batson*. *Chunn*, 210 Ga. App. at 211. Should the trial court determine that the defendants have shown discriminatory intent, a new trial is in order. Should the trial court determine that no *Batson* violation occurred, the defendants' convictions will remain in effect. Either party may file a notice of appeal from the trial court's ruling made on remand. Id. With regard to the question of discrimination, the court should consider the totality of the circumstances related to the *Batson* claim. See *Gay v. State*, 258 Ga. App. 634, 636-637 (1) (574 SE2d 861) (2002).

(c) With regard to juror no. 10, the State explained she was struck because she was under 21 years of age and she admitted to illegal underage drinking, a race- and gender-neutral reason. The defendants countered that juror no. 9, a male, admitted having been convicted of a crime, yet he was not struck. The court concluded that the reason offered by the State for striking juror no. 10 did not make sense but that it was a legitimate reason under *Pickett v. State*, 226 Ga. App. 743 (487 SE2d 653) (1997). Yet the principle relied upon in *Pickett* relates to step two of the three-step *Batson* procedure — whether the state offered neutral reasons. Id. at 745. Thus, the court in the present case failed to consider the ultimate question of discriminatory intent with regard to juror no. 10. This question regarding whether the State acted with discriminatory intent by striking juror no. 10 should also be addressed upon remand. See *McKenzie*, 223 Ga. App. at 114 (3) (c).

(d) With regard to juror no. 30, an African-American male, the State explained that it struck him because he was diabetic, did not appear to be in total command of his faculties, believed in witchcraft, was difficult to understand, and did not appear to understand questions asked of him. The defense countered that it did not recall any comments about witchcraft, rather, the man had said that the devil makes people do things sometimes. Otherwise, the defense did not offer anything to show that the State acted in a discriminatory fashion. The court agreed with the State's recollection that the man was "not all there." We find no clear error in this finding.

2. Wright and Young were charged with (1) armed robbery of Hennagir "by use of a handgun," (2) aggravated assault on Hennagir "by striking him in the head with [a] handgun," (3) aggravated assault with a deadly weapon on Hennagir "by threatening him with a handgun," (4) armed robbery of Strand "by use of a handgun," (5) aggravated assault with a deadly weapon on Strand "by threatening him with a handgun," (6) attempt to commit armed robbery of Willoughby by threatening him with a handgun, (7) aggravated assault with a deadly weapon on Willoughby "by threatening him with a handgun," and (8) possession of a firearm during the commission of a felony. They were both found guilty and sentenced on all eight counts.

The State contends that the crime of aggravated assault with a deadly weapon, against all three victims, was completed when the third perpetrator initially displayed the gun with the intent to intimidate. Then, according to the State, Wright and Young committed armed robbery by using a gun and committed aggravated assault on Hennagir by hitting him with the gun. Wright and Young contend that the aggravated assault charges (Counts 3, 5, and 7)

should have merged as a matter of law and fact into the armed robbery and attempted armed robbery charges (Counts 1, 4, and 6). We agree.

Georgia law bars conviction and punishment of all crimes that arise from the same criminal conduct and are as a matter of law or fact included in the major crime for which the defendant has been convicted. *Keener v. State*, 238 Ga. 7, 8 (230 SE2d 846) (1976); *Teal v. State*, 203 Ga. App. 440, 441 (1) (417 SE2d 666) (1992). Nevertheless, "[a]ggravated assault is not included in armed robbery as a matter of law, but it may be included as a matter of fact. [Cit.]" *Perkins v. State*, 216 Ga. App. 118, 120 (2) (453 SE2d 135) (1995). See also *Silvers v. State*, 278 Ga. 45, 48 (4) (597 SE2d 373) (2004). "Under the actual evidence test, a lesser crime is included in the crime charged if the evidence actually presented at trial to establish the elements of the crime charged also establishes all the elements of the lesser crime." *State v. Burgess*, 263 Ga. 143, 144-145 (1) (429 SE2d 252) (1993).

As the State suggests, it is possible to first commit aggravated assault by frightening the victim with a weapon and immediately thereafter to commit armed robbery by proceeding to use the weapon to rob the victim. See, e.g., *Blocker v. State*, 265 Ga. App. 846, 848 (2) (a) (595 SE2d 654) (2004) (defendant pointed gun and ordered victim to kneel, causing reasonable apprehension of injury; then defendant demanded victim's property). If separate facts are used to prove each crime, the defendant may be convicted of both crimes. Id.

But here, the only evidence is that the three assailants used the gun to rob the victims. There was not a separate aggravated assault before the robbery began. Compare *Blocker*, 265 Ga. App. at 848. Before that time the gun had only been "shown" and not pointed at anyone. Simultaneous with showing the gun, the assailants made clear that they intended to rob the victims, which they then proceeded to do, and the entire incident was over in a very brief time. The defendants were charged with armed robbery by use of a gun. Where the same assault is used to support a charge of aggravated assault and a charge of armed robbery, the aggravated assault conviction must merge with the conviction of armed robbery. See, e.g., *Curtis v. State*, 275 Ga. 576, 578-579 (2) (571 SE2d 376) (2002) (gun used only once, to take control of car, not separately as a threat); *Young v. State*, 177 Ga. App. 756, 757 (2) (341 SE2d 286) (1986) (only aggravated assault was that by which the armed robbery was effectuated); *Chitwood v. State*, 170 Ga. App. 599, 601 (4) (317 SE2d 589) (1984) (weapon used only in an effort to take property).

The defendants also contend that the count of aggravated assault by striking Hennagir (Count 2) merges with the armed robbery charge (Count 1) as a matter of fact because Hennagir refused to give up his money despite the initial display of the gun. Rather, they

contend, it was only by striking Hennagir that Young and the gunman were able to get Hennagir's money. For the same reasons as above, we agree. The evidence is undisputed that the robbery was not complete until the gunman struck Hennagir with the gun thereby allowing Young to take his money. The convictions for aggravated assault should have merged with the convictions for armed robbery and attempted armed robbery for the purpose of sentencing. See *Young*, 177 Ga. App. at 757.

The evidence was sufficient to support the remaining convictions of armed robbery, attempted armed robbery, and possession of a firearm during the commission of a felony.

3. Wright and Young contend that the trial court erroneously charged the jury that under Georgia law a witness can be impeached upon proof of general bad character or proof that the witness has been convicted of a crime of moral turpitude because no evidence of either was presented at trial.

The only person possibly impeached was Young. Young, the only defense witness, was 18 years old at the time of the incident. On direct examination, his attorney asked him what he was doing in midtown that night. Young said that he had gone to "Club Kaya." On cross-examination, the prosecutor asked him whether one had to be 21 years old to get into that club. Young replied that you do unless you know the person on security and that, on that night, the person on security who he knew had let him in.

Young argues under *Jones v. State*, 257 Ga. 753, 759 (1) (b) (363 SE2d 529) (1988), that this statement did not put his character in issue and therefore the charge should not have been given. The State admits that based on the evidence presented, the character portion of the charge was irrelevant to the evidence presented at trial.

"The giving of an unauthorized charge on an unavailable method of impeachment is generally harmless error. [Cits.]" *Francis v. State*, 266 Ga. 69, 72 (3) (463 SE2d 859) (1995). But if evidence is presented to which the charge could be applied then the error might be harmful. See *Peters v. State*, 72 Ga. App. 157, 160 (33 SE2d 454) (1945). We find the testimony to be so innocuous as to not amount to evidence of bad character. All Young said was that he was able to get in the club because he knew the bouncer. He did not indicate that he lied to get in, cheated to get in, or broke any laws. We therefore conclude that it is highly probable that the error did not contribute to the verdict. *Abernathy v. State*, 252 Ga. App. 635, 636 (556 SE2d 859) (2001).

4. Wright and Young, who were represented by separate counsel, both contend that their attorneys were ineffective in similar ways.

"In order to establish ineffectiveness of trial counsel, appellant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. There is a strong

presumption that the performance of trial counsel falls within the wide range of reasonable professional assistance." (Citation and punctuation omitted.) *Williams v. State*, 277 Ga. 853, 857 (6) (596 SE2d 597) (2004). "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. [Cit.]" *Kimmelman v. Morrison*, 477 U. S. 365, 384 (III) (A) (106 SC 2574, 91 LE2d 305) (1986). And, it is generally appropriate to assess counsel's overall performance

> throughout the case in order to determine whether the "identified acts or omissions" overcome the presumption that counsel rendered reasonable professional assistance. Since "(there) are countless ways to provide effective assistance in any given case," [*Strickland v. Washington*, 466 U. S. 668,] 689 [(104 SC 2052, 80 LE2d 674) (1984)], unless consideration is given to counsel's overall performance, before and at trial, it will be "all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." [Cit.]

Id. at 386 (III) (A).

(a) The defendants contend their counsel failed to file a motion to suppress and failed to properly object to the showup identification — as being impermissibly suggestive — and failed to object to the in-court identification. Failure to file a suppression motion does not constitute per se ineffective assistance of counsel. *Kimmelman*, 477 U. S. at 384. "When trial counsel's failure to file a motion to suppress is the basis for a claim of ineffective assistance, the defendant must make a strong showing that the damaging evidence would have been suppressed had counsel made the motion. [Cit.]" *Richardson v. State*, 276 Ga. 548, 553 (3) (580 SE2d 224) (2003).

Although "a one-on-one showup is inherently suggestive," an identification produced from a showup is not necessarily inadmissible. (Citation and punctuation omitted.) *Miller v. State*, 266 Ga. App. 378, 382 (1) (597 SE2d 475) (2004). When assessing the admissibility of such identification evidence, "[w]e apply a two-part test. . . . First, we determine whether the identification procedure was impermissibly suggestive. If it was, we then consider the totality of the circumstances to determine whether a very substantial likelihood existed of irreparable misidentification." (Punctuation and footnotes omitted.) *Hooper v. State*, 251 Ga. App. 533, 535 (2) (554 SE2d 750) (2001).

With regard to part one of the test, "[o]n-the-scene 'showup' identifications, like the one here, 'have been held not to be impermissibly suggestive but necessary due to the practicabilities inherent in such situations.' " (Footnote omitted.) *Watson v. State*, 243 Ga. App. 636, 638 (c) (534 SE2d 93) (2000). As long as the showup was reasonably and fairly conducted at or near the time of the offense, we do not reach the second part of the test. *Daniel v. State*, 150 Ga. App. 798, 800 (258 SE2d 604) (1979).[1]

The two suspects were handcuffed and in separate police cars when they were returned to the scene of the crime only minutes after the robbery. The mere fact that the men were in a police car when they were identified does not taint the identifications. *Jenkins v. State*, 216 Ga. App. 433 (454 SE2d 543) (1995). And here, there was no evidence that the victims knew that the men were in handcuffs. Compare *Miller v. State*, 266 Ga. App. 378, 383 (597 SE2d 475) (2004). Hennagir was taken from the first car to the second and each time asked, "Do you recognize this gentleman as one of the assailants." Strand testified to the same procedure except the officer said, "we're going to see if this is the man that mugged you." We find nothing unfair in these statements by the officer. See *Ivey v. State*, 277 Ga. 875, 876 (3) (596 SE2d 612) (2004) (asking victim "if one of the guys [pictured] is the one that went over the counter" was not impermissible) (punctuation omitted). And the defendants point to no other evidence that the showup was impermissibly suggestive. Accordingly, the defendants' claim of ineffective assistance of counsel for failure to object to the showup identification is without merit.

As for the in-court identification, challenges must be made through cross-examination. *Ivey*, 277 Ga. at 877 (4) (b). Here, the defense cross-examined the victims in an attempt to discredit their identifications. We find no error.

(b) Wright contends his counsel was ineffective by failing to object to the jury charge on impeachment during the charge conference. But his counsel made an exception to the charge as given and reserved his objections to the charge, and we have considered the merits of the issue above.

(c) Wright contends his counsel was ineffective by failing to object during closing argument when the prosecutor stated that a gun is a deadly weapon. Wright cites no law in support of this claim, and we find no error.

---

[1] At the hearing on the motion for new trial, trial counsel for Young testified that he believed that under the circumstances, a showup identification was permissible under the law and that therefore he did not see a need to file a motion to suppress.

(d) Wright contends his counsel was ineffective by failing to object during closing argument to the State's summary definition of attempted armed robbery. But, upon review, we find no basis for this claim. Trial counsel's failure to object to legitimate closing argument does not constitute deficient performance. See *Mason v. State*, 274 Ga. 79, 80 (2) (b) (548 SE2d 298) (2001).

(e) Young contends that his counsel should have objected to the prosecutor's closing argument when he said, "Mr. Young said . . . that he was at Club Kaya. . . . I don't think the bars in there let you or are lenient about people under 21 getting in." He argues that the information was a fact not in evidence. "As a general rule, prosecutors are granted wide latitude in conducting closing argument, and defining the bounds of such argument is within the trial court's discretion." (Footnote omitted.) *Arnold v. State*, 249 Ga. App. 156, 162 (4) (545 SE2d 312) (2001). This "wide latitude" encompasses the prosecutor's ability to argue reasonable inferences raised by the evidence. *Wyatt v. State*, 267 Ga. 860, 864 (2) (a) (485 SE2d 470) (1997). Young testified that one had to be 21 years old to get into the club that he claimed to have attended. It is a reasonable inference from this testimony that the club is not lenient about letting people in who are under 21 years of age.

*Judgments affirmed and cases remanded with direction. Ruffin, C. J., and Bernes, J., concur.*

DECIDED MARCH 21, 2005.

*David D. Bishop*, for appellant (case no. A04A1828).
*Dell Jackson*, for appellant (case no. A04A1829).
*Paul L. Howard, Jr., District Attorney, Marc A. Mallon, Assistant District Attorney*, for appellee.